**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE COUNTY DIVISION**

Civil Case No.:  1:14-cv-23100

AMBER GRACE TEUFEL, as an individual          **:**
and on behalf of all others similarly situated,     **:**
                                                                        **:**
           *Plaintiff,*                                             **:**
                                                                        **:**
*vs.*                                                                **:**
                                                                        **:**
KARLIN FOODS CORPORATION, an          **:**
Illinois corporation,                                       **:**
                                                                        **:**
           *Defendant.*

## CLASS ACTION COMPLAINT

Plaintiff, Amber Grace Teufel ("Plaintiff"), individually, and on behalf of all others

similarly situated in the United States, by and through her undersigned counsel, and pursuant to

all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and

alleges against Defendant, Karlin Foods Corporation ("Karlin" or "Defendant"), as follows:

## I. INTRODUCTION

1.       At all material times hereto, Defendant has unlawfully, misleadingly, and

deceptively represented that at least one variety of its Great Value Cornstarch food product is

"All Natural," despite containing unnatural, synthetic, artificial, and/or genetically modified

Cornstarch, in its Great Value Cornstarch product (referred to herein as the "Product").

2.       Despite the presence of these unnatural, synthetic, artificial, and/or genetically

modified ingredients, Defendant negligently markets and sells the Product as being "All

Natural."

3.    At all material times hereto, Defendant manufactures, markets, advertises, and sells the Product as being "All Natural" on the front packaging of the Product.

4.    At all material times hereto, all of the Product uniformly make the same "All Natural" claim in the same prominently displayed location on the front packaging of the Product. The representation that the Product is "All Natural," communicated to Plaintiff and other members of the Class, is central to the marketing and sale of the Product.

5.    Defendant's representation that the Product is "All Natural" is false, misleading, and likely to deceive reasonable consumers because the Product contains unnatural, synthetic, artificial, and/or genetically modified ingredients.

6.    Plaintiff brings this class action to secure damages and equitable relief, declaratory relief, restitution, and in the alternative to damages, relief for unjust enrichment, for a Class of similarly situated purchasers, against Defendant, for: (1) false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; and (3) Unjust Enrichment (alleged in the alternative to Plaintiff's other causes of action at law).

7.    Plaintiff is seeking damages individually and on behalf of the Class.  In addition, Plaintiff is seeking an Order requiring Defendant to cease from representing the Product is "All Natural" on the packaging for the Product that contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

8.    The advertising for the Product was designed to encourage consumers to purchase the Product and reasonably misled the reasonable consumer, *i.e.* Plaintiff and the Class, into purchasing the Product.   Therefore, the "All Natural" claim is likely to mislead reasonable consumers.

9.      Plaintiff expressly does not seek to require a GMO labeling on the Product.

10.     Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

## II. JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

12.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, as more fully set forth below, Plaintiff is a citizen of Florida, and Defendant can be considered a citizen of Delaware for diversity purposes.

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and the Parties have consented to this district.

## III. PARTIES

14.     Plaintiff, Amber Grace Teufel, is an individual more than 18 years old, and is a citizen of Florida, who resides in Palm Beach County.

15.     Defendant, Karlin Foods Corporation., promoted and marketed the Product at issue in this jurisdiction and in this judicial district.  Defendant is an Illinois corporation, with its

headquarters located at 1845 Oak St., 19, Northfield, Illinois 60093.  Defendant lists a Registered Agent with the Illinois Secretary of State as Mitchell J. Karlin, located at1845 Oak St., Ste 19, Northfield, Illinois 60093.

16.     The Product's advertising relied upon by Plaintiff was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein.

17.     Defendant is the owner, manufacturer and distributor of the Product and its "All Natural" misrepresentation, and is the company that created and/or authorized the unlawful, misleading and/or deceptive "All Natural" advertising for the Product.

18.     Plaintiff alleges that, at all times relevant herein, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

19.     Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Product to Plaintiff and members of the Class, also disseminated the misleading "All Natural" claim, and to the extent possible, were Defendant's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

20.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, induced members of the public to purchase the Product by means of untrue, misleading, and/or deceptive representations, and that Defendant participated in the

making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

21.     Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## IV. <u>FACTUAL ALLEGATIONS</u>

22.     Defendant manufactures, distributes, markets, advertises, and sells the Product that claims to be "All Natural," when in fact, the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch, and is thus not "All Natural."

23.     As a result, Defendant's "All Natural" claim, which is uniformly, consistently and prominently displayed on the front of each individual packaging of the Product, is untrue, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

24.     Defendant unlawfully markets, advertises, and sells the Product throughout the United States in grocery stores, and related food stores, as being "All Natural."

25.     At all material times hereto, Defendant sells the Product at a premium price above other similar products in the marketplace that do not claim to be "All Natural."

26.     Plaintiff and members of the Class were charged a price premium for the Product over and above other products that do not claim to be "All Natural."

A. Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers

27.     Defendant's false and misleading representations are likely to deceive Plaintiff and other reasonable consumers.

28.     Reasonable consumers rely on food label representations and information in making purchase decisions, such as an "All Natural" label on a food product.

29.     Upon information and belief, almost all corn grown in the United States is grown from seeds that have been genetically modified (commonly referred to as genetically modified organisms, or, for short, "GMOs"), and as such, almost all corn and corn-based ingredients in the United States are in fact unnatural, synthetic, artificial, and/or genetically modified ingredients.

30.     Defendant's statement that the Product is "All Natural," is material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether food products contain unnatural, synthetic, artificial, and/or genetically modified ingredients, especially when a product claims to be "All Natural."

31.     Reasonable consumers attach importance to an "All Natural" claim when making a purchasing decision.

32.     According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."  *See* Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/os/comments/greenguiderevisions/00289-57072.pdf (last visited Aug. 22, 2014).

33.     Defendant markets and advertises the Product as "All Natural," to increase sales of the Product.  Defendant is well-aware that claims of food being "All Natural" are material to reasonable consumers.

34.     Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations.

35.     Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations.

36.     Upon information and belief, Defendant made the deceptive representations regarding the Product to induce Plaintiff's and the other Class members' purchase of the Product.

37.     Defendant's representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

38.     Thus, Plaintiff and the other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed.   The materiality of those representations also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

39.     Upon information and belief, in making the false, misleading, and deceptive representations, Defendant knew or should have known that consumers would pay a price premium for the Product over comparable products that are not labeled "All Natural," furthering Defendant's private interest of increasing sales for the Product, and decreasing the sales of products sold by Defendant's competitors that do not claim to be "All Natural."

40.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the other Class members in that Plaintiff and other Class members:

1)  paid a sum of money for the Product that was not as represented;

2)  paid a premium price for the Product that was not as represented;

3)  were deprived the benefit of the bargain because the Product they purchased was different than what Defendant warranted;

4)  were deprived the benefit of the bargain because the Product they purchased had less value than what was represented by Defendant;

5)  did not receive a Product that measured up to their expectations as created by Defendant;

6)  ingested a substance that was other than what was represented by Defendant;

7)  ingested a substance that Plaintiff and the other members of the Class did not expect or consent to;

8)  ingested a product that was artificial, synthetic, or otherwise unnatural;

9)  ingested a substance that was of a lower quality than what Defendant promised;

10) were denied the benefit of knowing what they ingested;

11) were denied the benefit of truthful food labels;

12) were denied the benefit of supporting an industry that sells natural foods; and

13) were denied the benefit of the beneficial properties of the natural foods promised.

41.     Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Product.

42.     Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

43.     Plaintiff and the other Class members did not obtain the full value of the advertised Product due to the Product not being "All Natural."

44.     Plaintiff and the other Class members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Product.

**B.  Plaintiff's Reliance and Damages**

45.     Plaintiff has purchased one or more of the Product in Palm Beach County, Florida, during the Class Period, including a purchase for personal use during August 2013, from a Wal-Mart Supercenter located at 101 N. Congress Ave., Lake Park, Florida 33403, of Defendant's Great Value Cornstarch, which contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch but claims on the front of its labeling and packaging to be "All Natural."

46.     The Product purchased by Plaintiff claimed to be "All Natural" on the front packaging, which was a material term that Plaintiff perceived, read and relied on in making Plaintiff's decision to purchase the Product.  Indeed, had the "All Natural" representation not been on the label or packaging, Plaintiff would not have purchased the Product.

47.     However, the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch, and as a result, the Product is not "All Natural."

48.     Plaintiff reasonably interpreted the "All Natural" claim to mean that the Product did not contain unnatural, synthetic, artificial, or genetically modified ingredients.

49.     Subsequent to purchasing the Product, Plaintiff discovered that it is not "All Natural" because of the presence of unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

50.     Plaintiff and members of the Class paid a price premium for the Product because the Product claimed to be "All Natural."

51.     Plaintiff and members of the Class would not have purchased the Product had they known that it contained Cornstarch that is not "All Natural."

52.     Likewise, if Plaintiff and members of the Class had known the Product contained unnatural, synthetic, artificial, and/or genetically modified Cornstarch, they would not have purchased the Product.

53.     As a result, Plaintiff and members of the Class have suffered economic damages due to purchasing the Product that claims to be "All Natural" because the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

54.     The Product is therefore valueless, worth less than what Plaintiff and members of the Class paid for it, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

55.     Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Product during the Class Period and injunctive relief described below.

## V. CLASS ACTION ALLEGATIONS

56.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

57.     Pursuant to *Federal Rule of Civil Procedure* 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **All United States residents who have purchased the Product for personal use on one or more occasions, from August 22, 2010, through August 22, 2014.**

58.     Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,  and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

59.     Defendant's practices were applied uniformly to all members of the Class, including any subclass, so that the questions of law and fact are common to all members of the Class and any subclass. All members of the Class and any subclass were and are similarly affected by the deceptive advertising for the Product, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

60.     Based on the annual sales of the Product and the popularity of the Product, it is readily apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

61.     Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, *inter alia*:

a.     Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

b.     Whether the Product is "All Natural;"

c.     Whether the Cornstarch contained in the Product is "All Natural;"

d.     Whether the Cornstarch contained in the Product is unnatural;

e.     Whether the Cornstarch contained in the Product is synthetic;

f.      Whether the Cornstarch contained in the Product is artificial;

g.      Whether the Cornstarch contained in the Product is genetically modified;

h.      Whether the claim "All Natural" on the Product's packaging is material to a reasonable consumer;

i.      Whether the claim "All Natural" on the Product's packaging and advertising is likely to deceive a reasonable consumer;

j.      Whether the claim "All Natural" on the Product's packaging and advertising is misleading to a reasonable consumer;

k.      Whether a reasonable consumer is likely to be deceived by a claim that a product is "All Natural" when the product contains unnatural, synthetic, artificial, and/or genetically modified ingredients;

l.      Whether Defendant was unjustly enriched by the sale of the Product; and

m.      Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

62.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

63.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

64.     Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

65.     Certification of this class action is appropriate under *Federal Rule of Civil Procedure* 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members.  This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

66.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

67.     Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes.

68.     Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

69.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

70.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

**VI. FIRST CAUSE OF ACTION:**

## FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ*.

71.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy (70) of this Complaint as if fully set forth herein verbatim.

72.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*.

73.     The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

74.      Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

75.     The sale of the Product at issue in this cause was a "consumer transaction" within the scope of FDUTPA.

76.     Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*.

77.     Defendant's Product is goods within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of FDUTPA.

78.      Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff and members of the Class, and therefore, violate Section 500.04, *Florida Statutes*.

79.     Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

80.     Specifically, Defendant has represented that the Product is "All Natural," when in fact, the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

81.     Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendant's mislabeled Product.

82.     Reasonable consumers rely on Defendant to honestly represent the true nature of its ingredients.

83.     Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing the Product was something it was not; specifically that it is "All Natural."

84.     The knowledge required to discern the true nature of the Product is beyond that of the reasonable consumer—namely that the Product does or does not contain unnatural, synthetic, artificial, and/or genetically modified ingredients.

85.     Plaintiff and the Class suffered damages and are entitled to injunctive relief.

86.     Pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for damages, attorney's fees and costs. The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.  Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

87.     Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

### VII. SECOND CAUSE OF ACTION:
### NEGLIGENT MISREPRESENTATION

88.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy (70) of this Complaint as if fully set forth herein verbatim.

89.     Defendant has negligently represented that the Product is "All Natural."

90.     Defendant has represented that the Product is "All Natural," when in fact, the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

91.     Defendant has misrepresented a material fact to the public, including Plaintiff and Class Members, about the Product.

92.     The Product is marketed directly to consumers by Defendant, come in sealed packages, and does not change from the time it leaves Defendant's possession until it arrives in stores to be sold to consumers.

93.     Defendant knows the Product's misstatements are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing to purchase the Product.

94.     Defendant has omitted the fact that the Product contains unnatural, synthetic, artificial, and/or genetically modified ingredients in the Product, despite claiming that the Product is "All Natural."

95.     Defendant knew or should have known that these misstatements would materially affect Plaintiff's and Class members' decisions to purchase the Product.

96.     Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Product.

97.     The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a reputable business, and it distributed the Product through reputable companies.

98.     Plaintiff and Class members would not have been willing to pay for Defendant's Product if they knew that the Product contained unnatural, synthetic, artificial, and/or genetically modified ingredients.

99.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class were induced to purchase Defendant's Product, and have suffered damages, to be determined at trial, in that they have been deprived of the benefit of their bargain in that they bought a Product that was not what it was represented to be, and they have spent money on the Product that had less value than was reflected in the premium purchase price they paid for the Product.

100.    Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

## X. THIRD CAUSE OF ACTION: <br> UNJUST ENRICHMENT

101.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through seventy (70) of this Complaint as if fully set forth herein verbatim.

102.    In its marketing and advertising, Defendant has made false and misleading statements regarding the Product, as described herein.

103.    Defendant has represented that the Product is "All Natural," when in fact, the Product contains unnatural, synthetic, artificial, and/or genetically modified Cornstarch.

104.    The Product is marketed directly to consumer by Defendant, comes in sealed packages, and does not change from the time they leave Defendant's possession until they arrive in stores to be sold to consumers.

105.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Product. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Product to Plaintiff and other Class members.

106.    Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

107.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is aware that the "All Natural" claims that it makes about the Product are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

108.    Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

109.    Accordingly, the Product is valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Product paid by Plaintiff and Class members during the Class Period.

110.    Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product, over and above what they would have paid if the Product had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Product.

## XI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.    For an award of equitable relief for all causes of action as follows:

    (a)    Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Product in such manner as set forth in detail above, or from making any claims found to violate FDUTPA or the other causes of action as set forth above;

    (b)    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c)    Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

    (d)    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.    For actual damages in an amount to be determined at trial for all causes of action;

4.    For an award of attorney's fees and costs;

5.    For any other relief the Court might deem just, appropriate, or proper; and

6.    For an award of pre- and post-judgment interest on any amounts awarded.

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

**Respectfully Submitted By,**

Dated: August 22, 2014

*/s/   Michael T. Fraser*
Michael T. Fraser
Fla. Bar No.: 87411
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401
(800) 436-6437
(415) 692-6607 (fax)
Email: *mfraser@hwrlawoffice.com*

Attorneys for Plaintiff Amber Grace Teufel
and the Proposed Class